NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-296

COMMONWEALTH

vs.

MATTHEW PYE.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

In 2018, the defendant pleaded guilty to manslaughter, armed assault with intent to murder, and a firearm violation as a level two armed career criminal.  In 2022, the defendant filed motions to withdraw his guilty plea, arguing that the prosecution improperly withheld evidence and that his plea counsel was ineffective for failing to obtain that evidence. After a hearing, a judge of the Superior Court denied the defendant's motion to withdraw his plea.  We affirm.

Background.  At the defendant's plea hearing, he admitted to the following facts.  Just before 11:00 P.M. on August 16, 2015, Simon Holley and Jeffery Johnson arranged for Holley to sell one pound of marijuana to the defendant for $2,600.  Holley

wrapped up a laundry bag to make it appear that it contained marijuana, though it contained only clothing.  Holley recruited the victim to assist with the deal.  The victim and Holley met the defendant and Johnson in a yard adjacent to Newbury Street in Worcester.  The victim and Holley pulled handguns on the defendant.  While the victim and Holley searched the defendant's wallet and took the money that the defendant had brought to buy marijuana, the defendant pulled a handgun and fired at least one shot.  The gunfire left Holley with a gunshot wound to the hand and the victim with a gunshot wound to the back, which struck his aorta.  The victim died a short time later at the hospital.

The defendant and Holley fled, but Johnson stayed at the scene.  After the police arrived, Johnson told a detective that the person responsible was "right there," and gestured toward a wallet on the ground near where the victim's body had been.  The wallet contained the defendant's identification.  On August 20, 2015, the defendant admitted to police that he was on Newbury Street on the night of the shooting.  The defendant said that he heard shots fired, ran, and dropped his wallet.  He said that he did not know who did the shooting or why.

The defendant was indicted for murder, armed assault with intent to murder, and a firearm violation as a level three armed career criminal.  Pursuant to a plea agreement, the defendant pleaded guilty to manslaughter, a firearm violation as a level

2

two armed career criminal, and armed assault with intent to murder. The defendant was sentenced, based on an agreed recommendation, to concurrent terms of from fifteen to seventeen years in State prison for manslaughter and armed assault with intent to murder, and from twelve to fifteen years in State prison for the firearm violation.[1]

On May 23, 2022, the defendant filed a motion for post-conviction discovery and, on July 12, 2022, a supplemental request for the unredacted copy of a letter Johnson provided to the Commonwealth (Johnson letter). Also on July 12, 2022, the defendant filed a motion to vacate his convictions and withdraw his plea. In his affidavit in support of the motion, the defendant described seeing a redacted copy of the letter prior to pleading guilty. He stated that plea counsel told him that, according to the prosecution, the redacted portion was irrelevant to the defendant's case. The affidavit further stated that in December 2018, while serving his sentence, the defendant heard that Johnson made statements about Johnson's willingness to testify against Peter Jasper, who was involved in a different murder, as part of a plea deal in connection with Johnson's armed robbery charges stemming from the defendant's

---

[1] The defendant also admitted to prior convictions constituting qualifying convictions for serious, violent crimes for the purposes of enhanced penalties. See G. L. c. 269, § 10G.

case.  Jasper gave the defendant two other letters written by Johnson (Jasper letters), one of which referenced the defendant's case's docket number and stated that Johnson would testify against the defendant if Johnson were released.  When plea counsel read the Jasper letters, he stated that, "although [he was] not sure exactly how [the Jasper letters] would have played out in [his] analysis and recommendation[,] . . . it is likely that the Jasper letters could have contributed to a recommendation" that he ultimately made to the defendant.

On March 3, 2023, after reviewing an unredacted copy of the Johnson letter in camera, the judge ordered the Commonwealth to provide defense counsel with a copy of the letter.  On August 17, 2023, the defendant filed a supplemental motion to vacate convictions and withdraw his guilty plea.  In the newly unredacted Johnson letter, Johnson wrote to request leniency in his own case in exchange for his testimony in the defendant's case, as well as Jasper's and Holley's cases.

Discussion.  1.  Nondisclosure of the Johnson letter.  "A motion to withdraw a guilty plea is treated as a motion for a new trial pursuant to Mass. R. Crim. P. 30 (b)" (citation omitted).  Commonwealth v. Henry, 488 Mass. 484, 490 (2021).  "[W]e review the denial of a motion for a new trial for a 'significant error of law or other abuse of discretion.'"  Commonwealth v. Diaz, 100 Mass. App. Ct. 588, 592 (2022),

4

quoting Commonwealth v. Duart, 477 Mass. 630, 634 (2017), cert. denied, 584 U.S. 938 (2018). "Particular deference is to be paid to the rulings of a motion judge who served as the [plea] judge in the same case" (citation omitted). Commonwealth v. Lastowski, 478 Mass. 572, 575 (2018).

"To obtain a new trial on the grounds that the Commonwealth failed to disclose certain exculpatory evidence, a defendant must establish (1) that the evidence [at the time of the plea] was in the possession, custody, or control of the prosecutor or a person subject to the prosecutor's control, (2) that the evidence is exculpatory, and (3) prejudice" (quotation and citation omitted). Commonwealth v. Pope, 489 Mass. 790, 798 (2022). There is no dispute in this case that the Commonwealth was in possession of the unredacted Johnson letter at the time of the guilty plea. The defendant contends that the judge erred by finding that the redacted portions of the Johnson letter were not exculpatory. We need not resolve whether those portions were exculpatory, however, because we conclude that the defendant was not prejudiced by their nondisclosure. See id.

Whether the defendant was prejudiced by the nondisclosure of the unredacted portions of the Johnson letter rests on his demonstrating a reasonable probability that he would not have pleaded guilty had he known of the undisclosed information. See Commonwealth v. Hallinan, 491 Mass. 730, 750 (2023).

5

"Establishing such a reasonable probability requires examining the totality of circumstances, guided by a number of specific factors." Id. Those factors include:

> "(1) whether evidence of the government misconduct could have detracted from the factual basis used to support the guilty plea, (2) whether the evidence could have been used to impeach a witness whose credibility may have been outcome-determinative, (3) whether the evidence is cumulative of other evidence already in the defendant's possession, (4) whether the evidence would have influenced counsel's recommendation as to whether to accept a particular plea offer, and (5) whether the value of the evidence was outweighed by the benefits of entering into the plea agreement."

Id., quoting Commonwealth v. Scott, 467 Mass. 336, 355-356 (2014).

The defendant argues that the unredacted Johnson letter would have diminished the Commonwealth's case against him because it showed that Johnson sought leniency in his own case in exchange for testifying against the defendant. We disagree. It is mere speculation that the prosecution would have called Johnson to testify against the defendant. Notably, the unredacted Johnson letter also included Johnson's offer to testify against Jasper, but he did not testify at Jasper's trial. In addition, there was no evidence that Johnson was offered leniency in exchange for testifying in the defendant's case, or even that the prosecutor responded to Johnson's overtures at all. See Commonwealth v. Bateman, 492 Mass. 404, 421 (2023) (fact that witness provided information to police

6

years earlier in different case not exculpatory where witness was never offered promises, rewards, or inducements). Moreover, the unredacted Johnson letter, if provided to the defendant and if Johnson were called as a witness, would only have been admissible at trial to impeach Johnson on whether he sought leniency in exchange for his willingness to testify as opposed to the substance of his observations of the defendant's role in the crimes. See Commonwealth v. Drayton, 479 Mass. 479, 490 (2018) ("evidence that tends merely to impeach the credibility of a witness will not ordinarily be the basis of a new trial" [citation omitted]).

Nor are we persuaded by the defendant's assertion that the unredacted portions of the Johnson letter were "critical" because the only evidence against him was the testimony of his codefendants. The defendant's wallet and identification were found near the victim's body, the defendant acknowledged in his initial statement to the police that he was present at the time of the shooting and dropped his wallet at the scene, and an eyewitness identified a photograph of the defendant as "being most similar" to the person who shot the victim.[2]

---

[2] The defendant contends that the witness's "testimony . . . was ultimately refuted." It is not clear from the record whether any such issues with the witness occurred before or after the defendant's plea.

The defendant does not specifically argue here that disclosure of the unredacted portions of the Johnson letter would have influenced his plea counsel's recommendation for him to plead guilty. Plea counsel acknowledged that he was "not sure exactly how [the unredacted letters] would have played out in [counsel's] analysis and recommendation." In any event, the defendant has not shown that the value of the redacted information outweighed the benefits of the plea agreement. As discussed, the relevance of Johnson's overtures to the Commonwealth was largely speculative. In contrast, the defendant received significant charge concessions in exchange for his guilty plea and mitigated the risk of longer prison sentences than he would have faced had he gone to trial.[3] Furthermore, the defendant admitted under oath to facts that supported his involvement in the victim's killing. "The plea proceeding is not some frivolous exercise, where words have no meaning and answers are of no consequence. Nor is it a game where a defendant enters a plea to test the weight of potential punishment as a prelude to a postconviction challenge"

---

[3] As indicted for felony murder, the defendant faced a mandatory term of life in State prison, but he was sentenced to fifteen to seventeen years on the reduced charge of manslaughter. See G. L. c. 265, § 2 (murder); G. L. c. 265, § 13 (manslaughter). The reduction of his firearm charge from level three to level two reduced his maximum exposure from twenty to fifteen years with a minimum sentence of ten years instead of fifteen. See G. L. c. 269, § 10G (b) & (c).

(quotation and citations omitted).  Commonwealth v. Williams, 71 Mass. App. Ct. 348, 355 (2008).  "The defendant's sworn statements must not be discarded on the later assertion that he had his fingers crossed."  Commonwealth v. Hiskin, 68 Mass. App. Ct. 633, 640 (2007).

Ultimately, we conclude that the defendant failed to demonstrate prejudice and thus discern no error or abuse of discretion in the judge's denial of the defendant's motion to withdraw his pleas based on the nondisclosure of the unredacted portions of the Johnson letter.

2.  Ineffective assistance of counsel.  When the basis for a motion to withdraw a guilty plea is a claim of ineffective assistance of counsel, "the defendant must show that the behavior of counsel fell measurably below that of an ordinary, fallible lawyer and that such failing 'likely deprived the defendant of an otherwise available, substantial ground of defence.'"  Commonwealth v. Prado, 94 Mass. App. Ct. 253, 255 (2018), quoting Commonwealth v. Saferian, 366 Mass. 89, 96 (1974).  The defendant "has the burden of demonstrating a reasonable probability that, but for counsel's ineffective assistance, he or she would not have pleaded guilty and instead would have insisted on going to trial."  Henry, 488 Mass. at 495-496.  The defendant argues that plea counsel was ineffective for failing to obtain the unredacted Johnson letter, and asserts

9

that, had counsel obtained the letter, the defendant would have gone to trial.

The defendant contends that the only potential evidence against him at trial was the testimony of his codefendants, Johnson and Holley. As previously discussed, other evidence linked the defendant to the shooting, including the presence of his wallet at the scene, his own statement that he was present at the time of the shooting, and a potential eyewitness. Plea counsel reasonably accepted the Commonwealth's representation that the redacted portions of the Johnson letter were irrelevant to the defendant's case, and the defendant offers no argument as to why plea counsel should have doubted the Commonwealth's representation or how counsel could have obtained the unredacted Johnson letter. Plea counsel was thus not ineffective for not obtaining the unredacted Johnson letter. See Commonwealth v. Miller, 101 Mass. App. Ct. 344, 349 (2022) (defendant "failed to detail how [plea] counsel's alleged shortcomings fell measurably below the standard of an ordinary fallible lawyer").

Regardless, the defendant offers only conclusory assertions that, had counsel obtained the unredacted Johnson letter, he could have negotiated a more favorable sentence. "The record in this case suggests that the driving factor in the defendant's decision to plead guilty was the avoidance [of substantially more incarceration]. The defendant has not shown that it would

10

have been a more rational decision to go to trial, where he was facing a likely conviction [and] far more committed time" (quotation and citation omitted).  Commonwealth v. Chleikh, 82 Mass. App. Ct. 718, 729 (2012).  Thus, the judge properly denied the motion for a new trial.  See Commonwealth v. Camacho, 472 Mass. 587, 604 (2015) (defendant failed to show that plea outcome "would have been different with competent advice").

Order denying motion for new trial affirmed.

By the Court (Desmond, Sacks & Brennan, JJ.[4]),

*Paul Little*

Clerk

Entered:  August 19, 2025.

---

[4] The panelists are listed in order of seniority.

11